IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE FLATEN, ) | |
| ) | |
| Plaintiff, ) | No.  08 C 4772 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff George Flaten ("Flaten") brought this action against United Parcel Service, Inc. ("UPS") alleging violations of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et. seq. and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, et. seq., as a result of defendant's termination of plaintiff's employment. Pursuant to Fed. R. Civ. P. 56, defendant has moved for summary judgment. For the reasons discussed below, defendant's motion for summary judgment on both counts is granted.

**FACTS ESTABLISHED FROM THE RECORD[1, 2]**

Plaintiff, a forty-four year old male, had been a UPS employee for nearly twenty-three years, prior to his termination on June 2, 2008. He began as a loader/unloader, ultimately working his way up to a Level 16 manager of part-time non-driving employees who sorted

---

[1] Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and attached exhibits are not in dispute.

[2] The court takes issue with several of plaintiff's objections to Defendant's Local Rule 56.1 Statement of Material Facts to the extent that many of them are unnecessarily and impermissibly argumentative. To the extent that plaintiff's objections do not challenge the substance of the facts presented, those statements are deemed admitted by plaintiff. See e.g., Uncontested Facts ("U.F.") ¶¶ 1, 5-9, 11, 17, 20, 21, 23.

packages for trans-shipment in Addison, Illinois. Plaintiff had been employed by defendant since on or about October 14, 1985. In the fall of 2007, plaintiff started to date a fellow UPS co-worker and Level 16 manager, Nicole Pietrangeli ("Pietrangeli"). Pietrangeli, 11 years plaintiff's junior, has been a level 16 manager since January 2006, and has been employed by defendant since March 1998. At all relevant times, she has been the Center Manager in UPS's DeKalb and Peru, Illinois facilities, supervising UPS drivers.

For the last 30 years, defendant has had a non-fraternization policy (the "Policy") that warns all management employees to "strictly avoid" entering into romantic, dating, and/or sexual relationships with co-workers. Management employees are also warned to "strictly avoid entering into [close personal] relationships that present issues that may in any manner negatively impact the workplace, such as issues of security, supervision/evaluation, morale or confidentiality." Where two managers engage in a romantic relationship, the Policy states as follows:

> "If both employees hold management positions, they should be given the opportunity to choose which of them will voluntarily leave the company. If they are unable or unwilling to make this decision, the employment of the individual who holds the higher management position should be terminated. If they are employed at the same management level, the employment of the individual who has longer tenure with the company should be terminated."

Plaintiff and Pietrangeli did not disclose their relationship until May 29, 2008, when Pietrangeli informed her supervisor, Randy Dunn, who encouraged Pietrangeli to keep her job with defendant. On May 30, 2008, plaintiff and Pietrangeli jointly informed Defendant's Illinois District Human Resources Manager, James Baier, about their relationship. Baier reminded plaintiff and Pietrangeli about UPS's Policy and gave them until June 2, 2008, to decide which one of them would leave UPS, pursuant to the Policy. Baier explained that the Policy required

plaintiff to leave in light of his longer tenure if plaintiff and Pietrangeli were unable to decide. Subsequent to this meeting, plaintiff informed his boss and Division Manager, Robert Notaro, of the relationship. Notaro acknowledged that plaintiff and Pietrangeli had a tough decision to make. Notaro invited plaintiff to contact him over the weekend if plaintiff had made a decision.

Following his discussion with plaintiff, Notaro met with Barbara Schweihs, a full-time training supervisor, and Mark McNicholas, a hub manager. During that meeting, Notaro directed Schweihs to prepare a requisition form to fill plaintiff's position, in the event that plaintiff would vacate his position on Monday, June 2.[3] Also that day, defendant identified a twenty-seven year old male employee, Jeff Schultz, to replace plaintiff if plaintiff's employment ended.

Later in the afternoon of May 30, McNicholas called plaintiff to apprise him of comments Notaro had allegedly made about plaintiff during the meeting with McNicholas and Schweihs. Allegedly, Notaro stated that plaintiff's name would be mud if he chose to remain employed by defendant after violating the Policy and wondered "why would we want to keep a 40-year old balding white male" as opposed to a promotable female (Pietrangeli). Soon after the conversation with McNicholas, plaintiff contacted Baier to express concern about the negative impact Notaro's statements had on plaintiff and Pietrangeli's decisionmaking. On Sunday, June 1, plaintiff and Pietrangeli concluded that neither of them would resign, even though Pietrangeli had prior intentions of leaving the company and had gone on interviews. The couple was concerned that, based on Notaro's statements, plaintiff would face a very negative work

---

[3] Notaro was to be out of the country and unavailable for a full week, beginning on Sunday, June 1.

3

environment, or would otherwise be terminated, if Pietrangeli chose to resign, thus, potentially leaving both of them without a job.

Plaintiff's employment with UPS ended on the morning of June 2, 2008, after a telephone conversation with Baier, as a result of both plaintiff's and Pietrangeli's refusal to resign. Pietrangeli remained employed by defendant and did not suffer any repercussions as a result of her violation of the Policy. Although plaintiff does not dispute that the Policy applies to the instant case, plaintiff contends that defendant's discriminatory conduct and intent was "manifested through [d]efendant's failure to follow the process promulgated by [d]efendant's non-fraternization policy." Defendant further contends that, "[a]s a result of defendant's strong-arm discriminatory tactics manifested through its more favorable treatment of Pietrangeli, plaintiff and Pietrangeli re-evaluated their decision [that Pietrangeli would resign] out of fear for retaliation" against plaintiff.

## DISCUSSION

**I. Summary Judgment Standard**

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record

as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993) (citations omitted). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## II. Count I: Sex Discrimination – Title VII

In Count I of the complaint, plaintiff alleges that defendant violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et. seq. when it terminated his employment, pursuant to defendant's Policy, after he and his girlfriend and fellow UPS manager, Pietrangeli, disclosed that they were dating and intended to marry. Plaintiff alleges in his complaint that defendant "impose[d] a course of disparate treatment against [p]laintiff, as compared to Pietrangeli, that effectively deprived [p]laintiff of his right to choose to remain an employee of [d]efendant." Plaintiff further alleges that he was subjected to disparate treatment because Pietrangeli was encouraged to remain employed by defendant, while defendant allegedly discouraged plaintiff from returning to work and engaged in coercive conduct in an attempt to

5

discourage plaintiff from returning. Finally, plaintiff contends that defendant's efforts to obtain plaintiff's resignation are in accord with defendant's pattern and practice of preferential treatment toward female managers.

To prevail on a claim of sex discrimination, plaintiff may meet his burden of proof by establishing intentional discrimination either through direct or circumstantial evidence of discriminatory intent, Senner v. Northcentral Technical College, 113 F.3d 750, 754 (7th Cir. 1997), or, as is more common, through the indirect burden-shifting method of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." Cerutti v. BASF Corp., 349 F.3d 1055, 1061 (7th Cir. 2003). Direct evidence "requires an admission by the decisionmaker that his actions were based upon the prohibited animus." Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003) (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000)). Circumstantial evidence is "evidence that allows a jury to infer intentional discrimination by the decisionmaker." Rogers, 320 F.3d at 753.

In the instant case, plaintiff contends that he has "construct[ed] a mosaic of circumstantial evidence to prevail in his discrimination claims." However, the evidence presented is irrelevant. First, plaintiff has proffered evidence of comments allegedly made by UPS Division Manager Robert L. Notaro concerning plaintiff's age and gender.[4] During a meeting, which concerned plaintiff's and Pietrangeli's violation of the Policy, Notaro purportedly stated that if plaintiff remained under defendant's employ, his name would be

---

[4] Notaro has denied that he made the statements attributable to him, but that dispute is immaterial given these alleged statements' irrelevance.

"mud". Notaro also allegedly inquired, "Why would we keep a 40-year old balding male without a degree when we have a female that's a division manager candidate that will likely get promoted in a year or two?" These statements do not evidence discriminatory conduct by defendant since the record demonstrates that Notaro was not the decisionmaker, did not participate in the termination of plaintiff, and did not otherwise influence Baier, the ultimate decisionmaker. See e.g., Ellis v. UPS, No. 1:06-cv-00366, 2007 WL 2051364, at *6 (S.D. Ind. July 12, 2007) (finding that employees' remarks were not direct evidence of discrimination as the individuals played no role in the plaintiff's termination; Fuka v. Thomson Consumer Elecs., 82 F.3d 1397, 1402-04 (7th Cir. 1996) (affirming lower court's grant of summary judgment in part because plaintiff failed to link supervisor's age-based comments to her termination); see also Cheek v. Peabody Coal Co., 97 F.3d 200, 203 (7th Cir. 1997) ("a statement must relate to the motivation of the decisionmaker responsible for the contested decision").

The record in the instant case is bereft of any evidence that anyone other than Baier played a role in plaintiff's termination or that Baier relied upon input from, or was otherwise influenced by, anyone. He was merely enforcing the plain language of the Policy by terminating the more senior member of the couple. Further, before plaintiff's employment was terminated on June 2, 2008, Baier, who was not at the meeting when Notaro allegedly made the comments, did not communicate with Notaro, who was out of the country from June 1-8, 2008. There is no evidence that Notaro's comments were communicated to or influenced Baier in any way.

Second, plaintiff's proffered evidence of events and statements made after plaintiff's June 2 termination/resignation have no bearing on whether defendant was motivated by illegitimate reasons. Plaintiff presents evidence of a statement allegedly made by operations

7

manager, John Desis, one month after plaintiff's termination, concerning Desis's desire to replace all old managers with younger managers. Plaintiff also presents evidence that a fellow UPS employee and friend of plaintiff was summarily reassigned to night sort after having reported Notaro's and Desis's aforementioned comments to the corporate hotline. This evidence is irrelevant because the alleged statements and incidents occurred after plaintiff's termination and are not attributed to Baier, the person who decided to terminate plaintiff. "[D]efendant's post-termination actions are irrelevant to the question whether it discriminated against plaintiff on the basis of age." Hamilton v. Nat'l Propane, 276 F. Supp. 2d 934, 948 (W.D. Wis. 2002); see also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C., 96 F. Supp. 2d 763, 772 (N.D.Ill. 2000) ("post-termination actions do not constitute evidence supporting an inference that the [employer's] stated reasons were false"). In sum, no jury could reasonably infer intentional discrimination based on these facts.

Because plaintiff has no direct or circumstantial evidence of discriminatory intent, he also asserts the indirect method. To establish a prima facie case of discrimination with respect to his termination, plaintiff must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action[5];

---

[5] The parties do not dispute that plaintiff suffered an adverse employment action. Both parties acknowledge that plaintiff was terminated pursuant to the non-fraternization policy because of his and Pietrangeli's inability to decide which one of them would leave UPS after their relationship became known. However, plaintiff contends that defendant's "strong-arm discriminatory tactics" "estopped [him] from making a free choice," out of fear that they both could end up without a job, and this indecision caused plaintiff's termination under the Policy. In other words, plaintiff appears to contend that he was subjected to a constructive discharge. The question, then, is whether plaintiff was coerced into indecision; whether plaintiff really was deprived of free choice and reasonably believed that had Pietrangeli, and not he, resigned, he would have been terminated. See Graehling v. Village of Lombard, No. 94 C 4084, 1994 WL 698525 (N.D.Ill. Dec. 12, 1994) (discussing coercion and duress in context of (in)voluntary resignation); Christie v. United States, 518 F.2d 584, 587 (Ct. Cl. 1975) ("Duress is not

and (4) other similarly-situated employees who were not members of the class were treated more favorably. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Koski v. Standex Int'l Corp., 307 F.3d 672, 676 (7th Cir. 2002).

Once plaintiff has met his burden, the employer must then produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. If the employer offers such a reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir. 1998). For purposes of defeating summary judgment, plaintiff need only produce evidence from which a rational fact finder could infer that the defendant's proffered reasons was pretextual. At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him. See Hughes v. Brown, 20 F.3d 745 (7th Cir. 1994).

In the instant case, the parties dispute whether plaintiff meets the first, second, and fourth elements of the prima facie case. Defendant claims that plaintiff cannot establish the first element because plaintiff has not presented evidence to support an inference that defendant

---

measured by the employee's subjective evaluation of a situation. Rather, the test is an objective one."); see also EEOC v. Univ. of Chicago Hospitals, 276 F.3d 326, 329-30 (7th Cir. 2002) (finding evidence of constructive discharge where supervisor demonstrated a clear intent to fire employee for certain religious affiliations by firing intermediaries who hindered supervisor's efforts, negatively influencing employee's performance evaluations, and withholding information from employee); Novak v. Nicholson, 231 Fed. Appx. 489, 494-95 (7th Cir. 2007) (noting the severity of conduct required to trigger a constructive discharge). The elements of duress are: 1) one side involuntarily accepts the terms of another, 2) circumstances permit no other alternatives, and 3) the circumstances were the result of the coercive acts of the opposite party. Walsh v. City of Chicago, 712 F. Supp. 1303, 1308 (N.D.Ill. 1989). While it is possible that plaintiff perceived no alternative but to be terminated, from an objective standpoint the record does not suggest that plaintiff's termination was the only option. No reasonable jury could infer from Notaro's statements that plaintiff's only option was to leave UPS.

discriminated against the majority (i.e. engaged in reverse discrimination against men). In cases of reverse discrimination, the first element of the McDonnell Douglas test cannot be used. Instead, a male plaintiff must establish background circumstances sufficient to demonstrate that the employer has a "reason or inclination to discriminate invidiously against [men]" or that "there is something 'fishy' about the facts at hand." Phelan v. City of Chicago, 347 F.3d 679, 684 (7th Cir. 2003) (quoting Mills v. Health Care Service Corp., 171 F.3d 450, 455 (7th Cir. 1999)). Acceptable means of establishing "something fishy" can include an expressed interest in hiring a woman, evidence of an established pattern of hiring women over men, evidence that males were overlooked in favor of less-qualified women, or that the employer departed from normal procedures as a means of hiring more females. Mills, 171 F.3d at 457. Even if a plaintiff cannot show background circumstances, he may still proceed so long as he "has established a logical reason to believe that the [employer's] decision rests on a legally forbidden ground." Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996).

Plaintiff attempts to establish background circumstances concerning disproportionate hiring patterns by presenting evidence that he and his peers believed that defendant treated less capable female managers more favorably. In support of this belief, plaintiff identified only one woman over plaintiff's 23 years at the company, who was given less responsibility rather than being terminated. Plaintiff also testified that at several meetings, Notaro and Desis "made [ ] explicit representations that it was defendant's goal to find and develop female candidates." However, both pieces of evidence are unavailing.

First, plaintiff's subjective beliefs, without supporting hard evidence, are insufficient to create a genuine issue of material fact or prove that an action was "inspired by improper

10

motivations." Pilditch v. Bd. of Educ. of City of Chicago, 3 F.3d 1113, 1119 (7th Cir. 1993); see also McMillian v. Svetanoff, 878 F.2d 186, 190 (7th Cir. 1989); Andre v. Bendix Corp., 841 F.2d 172, 176 (7th Cir. 1988); Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 574 (noting the plaintiff's inability to connect an alleged trend with the defendant's decision to terminate him). That one woman may have received more favorable treatment belies any notion that something "fishy" informed defendant's hiring and retention practices. See Talbott v. Empress River Casino Corp., No. 95 C 5317, 1996 WL 400033, at *16 (N.D.Ill. July 15, 1996) ("At best, [plaintiff] shows that one similarly situated male employee received better treatment. This is not sufficient to show 'systematically better treatment' of similarly situated male employees.").

Second, a stated goal to find and develop candidates/employees who are underrepresented at the management levels of a given workplace does not demonstrate that the employer has a "reason or inclination to discriminate invidiously against men." Certainly, such a goal helps to ensure that females are not discriminatorily excluded from management positions. The record contains no evidence that a general desire to find and develop qualified female managerial candidates translated into a specific plan to terminate plaintiff because of his gender. See Pilditch, 3 F.3d 1113, 1118-19.

Even if plaintiff had presented evidence that defendant discriminated against him on the basis of gender, defendant has presented evidence that plaintiff was terminated for at least one, if not two, legitimate non-discriminatory reasons. First, the Policy mandated plaintiff's termination since neither he nor Pientrangeli resigned. Second, defendant viewed Pietrangeli as having greater potential and better qualifications than plaintiff, since Pietrangeli had a valid driver's license (which enabled her to supervise drivers) and an associate's degree in business

11

management, while plaintiff had no driver's license or degree. Therefore, plaintiff has failed to present evidence to support an inference that defendant discriminated against men.

The parties also dispute whether plaintiff has met the second element of a <u>McDonnell-Douglas</u> prima facie claim, that he was meeting his employer's legitimate business expectations. Plaintiff contends that he has met defendant's legitimate business expectations, as manifested by positive performance evaluations and a salary increase he received in March 2007. Defendant acknowledges that plaintiff's work performance was acceptable, but contends that plaintiff failed to meet defendant's legitimate employer expectations when he violated defendant's Policy. The court agrees that plaintiff has satisfactorily performed his job and thus has met the second element of a prima facie claim. The parties do not dispute that during plaintiff's tenure at UPS, he received several promotions and satisfactory performance evaluations; in March 2007, he received a nine percent salary increase. Plaintiff's violation of defendant's Policy is distinguishable from plaintiff's satisfactory job performance/qualifications. In <u>Lewis v. Johnson Controls</u>, No. 96 C 6209, 1997 WL 790597, at *3 (N.D.Ill. Dec. 18, 1997), the court noted, "the issue at the prima facie stage is whether [the plaintiff] was qualified for his position before the incident [giving rise to the adverse employment action]…[A] single violation of a workplace rule does not per se render an employee unqualified for a job." The <u>Lewis</u> court found that the plaintiff showed satisfactory job performance and was qualified for his job despite an altercation with a fellow employee, which resulted in termination. <u>See</u> <u>also</u> <u>Roy v. Austin Co.</u>, No. 94 C 740, 1996 WL 599435, at *12 (N.D. Ill. Oct. 16, 1996) (finding that plaintiff performed job satisfactorily, as per performance reviews, and was qualified, despite having called a client a profanity, which conduct led to his termination).

The parties also dispute whether the plaintiff has established the fourth element of a prima facie gender discrimination claim. Plaintiff identifies Pietrangeli as a "similarly situated" employee, who received better treatment, despite having also violated defendant's policy. Plaintiff contends that Pietrangeli is similarly situated because "[p]laintiff and Pietrangeli were both managers of [d]efendant who were employed at the same grade level, and were ultimately subject to the same decision-maker, Baier." Plaintiff further contends that "[a]s managers, [p]laintiff and Pietrangeli were subject to the same standards and engaged in the same…violation of [d]efendant's non-fraternization policy." The court disagrees that Pietrangeli and plaintiff are similarly situated employees. "In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case." Radue, 219 F.3d at 617. Plaintiff must show that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id. at 617-18.

In the instant case, plaintiff and Pietrangeli were not similarly situated. Pietrangeli was a UPS employee for a shorter time than plaintiff, by a period of 13 years. See Tyson v. Gannett Co., 538 F.3d 781, 784 (7th Cir. 2008) (finding that the plaintiff and another employee were not similarly situated because plaintiff was employed by defendant company for three years less than other employee). Because of this shorter tenure, the Policy subjected Pietrangeli to different standards. Specifically, where two managers of the same level started dating, the Policy called for the termination of the employee with longer tenure, where neither one voluntarily resigns. The length of tenure was not a factor that could be manipulated by defendant and, thus, not

13

subject to the defendant's whims or discriminatory motives. Cf., Filar v. Bd. of Educ., 526 F.3d 1054 (7th Cir. 2008) (noting the manipulability of seniority at defendant's institution where seniority was not simply tied to length of service, but also influenced by whether one had a tenure-track position, which the employer had the power to grant or deny). Further, defendant's decision to terminate the employee with greater tenure was based on a legitimate personnel concern, rather than on a discriminatory motive. As indicated in the record, the employee with greater tenure is subject to termination because the higher level or more senior manager is deemed more culpable. Consequently, Pietrangeli and plaintiff are not similarly situated.

In sum, plaintiff provides no evidence of any female employee who was similarly situated, but received better treatment. Plaintiff has failed to establish a prima facie case of sex discrimination. No reasonable jury could find that defendant engaged in sex discrimination when it terminated plaintiff pursuant to defendant's Policy. Defendant's motion for summary judgment is granted on Count I.[6]

### III. Count II: Age Discrimination – Violation of the ADEA

In Count II of the complaint, plaintiff alleges that defendant violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et. seq. when defendant terminated his employment and retained his "substantially younger" girlfriend, Pietrangeli. Plaintiff also contends that defendant's discriminatory motive manifested itself when plaintiff replaced him with a substantially younger, twenty-seven year old male employee and identified this replacement in advance of plaintiff's termination.

---

[6] In any event, even had plaintiff satisfied his prima facie burden under McDonnell Douglas, for the reasons discussed above, defendant's enforcement of the Policy could not be considered pretextual.

The ADEA makes it unlawful for an employer to discharge an employee because of age when the employee is over forty years old. 29 U.S.C. §§ 623(a)(1), 631(a). To prove his claim, plaintiff must show that he would not have been fired but for his age. Fuka, 82 F.3d at 1402. As with his Title VII claim, plaintiff may prove his age discrimination claim through the use of direct or circumstantial evidence[7]. McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 371 n.2 (7th Cir. 1992); Oxman v. WLS-TV, 846 F.2d 448, 452 (7th Cir. 1988) (citations omitted). Alternatively, he may prove his case indirectly through the McDonnell Douglas burden-shifting method, under which plaintiff must show that: (1) he was in the protected age group (age 40 or older); (2) he was performing his job satisfactorily; (3) he was discharged; and (4) he was replaced by someone substantially younger or that younger similarly-situated employees were treated more favorably. Denisi v. Dominick's Finer Foods, Inc., 99 F.3d 860, 864 (7th Cir. 1996).

Once plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a non-discriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802-03; Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 869 (7th Cir. 1995). If defendant articulates a nondiscriminatory reason for its action, plaintiff must prove that its stated reason is merely a pretext for discriminatory action.

The Seventh Circuit has defined pretext as "more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" Wolf v. Buss (America), Inc., 77 F.3d 914, 919 (7th Cir. 1996), cert. denied, 117 S. Ct. 175 (quoting Russell v.

---

[7] As with plaintiff's sex discrimination claim, plaintiff relies on circumstantial evidence of statements made by Notaro to support his age discrimination claim. However, for reasons previously discussed, this evidence is not persuasive.

Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995)). A plaintiff can demonstrate that the defendant's proffered reasons are pretextual in one of two ways: "(1) by showing that a discriminatory reason more likely than not motivated the employer (i.e. that the company's proffered reasons were not the sole determining factors…)" or (2) "that the employer's proffered explanation is unworthy of credence." Kralman v. Illinois Dep't of Veteran's Affairs, 23 F.3d 150, 156 (7th Cir. 1994), cert. denied, 513 U.S. 948. "In essence, the plaintiff must demonstrate either that the real reason for his termination was age or that the stated reason is unworthy of belief." Richter v. Hook-SupeRx, 142 F.3d 1024, 1030 (7th Cir. 1998).

Contrary to defendant's contention, plaintiff has made out a prima facie case of age discrimination. Plaintiff was forty-three years old at the time of his termination, he was replaced by a substantially younger male employee, and he received satisfactory performance evaluations while he was employed by defendant. Defendant has offered a legitimate, non-discriminatory reason for plaintiff's termination, namely plaintiff's violation of the Policy.

Plaintiff has not presented evidence that defendant's proffered reason for its termination of plaintiff was pretextual, that age was a "determining factor" or a "but for" element in the defendant's decision. Sarsha v. Sears, Roebuck & Co., 3 F.3d at 1038 (citing Anderson v. Stauffer Chem. Co., 965 F.2d 397, 400 (7th Cir. 1992)). Plaintiff contends that defendant treats younger managers more favorably. As evidence of this, plaintiff points to an instance where, in response to a complaint about Schultz, Notaro justified Schultz's missteps by stating that he was merely an "over-enthusiastic young manager trying to make service on packages." However, where plaintiff claims he was treated less favorably than a similarly-situated employee, "plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct."

16

Radue, 219 F.3d at 617-18. In the instant case, plaintiff and the significantly younger Schultz were not engaged in the same conduct. Schultz's conduct concerned his oversight of package deliveries. Plaintiff's conduct concerned the violation of defendant's Policy as a manager with longer tenure. Therefore, they are not similarly-situated.

As further support for the conclusion that plaintiff's evidence does not lead to an inference of age discrimination, the court notes that the sole apparent decisionmaker, Baier, was 52 years old at the time of plaintiff's termination. At the same time, Notaro, plaintiff's boss who allegedly pressured plaintiff to resign, was 53 years old. "While not dispositive, this Court has found it significant that individuals alleged to have discriminated on the basis of age were themselves members of the protected class." Richter, 142 F.3d at 1032. Finally, as noted above, even if plaintiff has met his burden of establishing a prima facie case under McDonnell Douglas, defendant's enforcement of the Policy by terminating the more senior of the couple could not be found to be pretextual.

For the foregoing reasons, defendant's motion for summary judgment is granted on Count II.

## CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment on Counts I and II.

**ENTER:** **July 27, 2009**

_____
**Robert W. Gettleman**
**United States District Judge**